# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CELIA HNIZDOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 1740 |
| | ) | |
| PYRAMID MOULDINGS, INC., | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Celia Hnizdor brought this action against defendant Pyramid Mouldings, Inc. ("Pyramid") alleging two counts of age discrimination pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621.  (Compl. ¶¶ 1-12.)  [Dkt 1.]  Pyramid has moved for summary judgment pursuant to Fed. R. Civ. P. 56 on several grounds, specifically, that Hnizdor cannot establish age discrimination under either the direct or indirect methods of proof, and that Hnizdor is judicially estopped or barred from recovering under the complaint based on her settlement of a prior legal malpractice suit.  [Dkt 50.]

The parties have consented to the exercise of jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  [Dkt 25.]  For the reasons set out below, Pyramid's motion is granted.

# FACTUAL BACKGROUND[1]

## A.    Hnizdor's Employment with Pyramid

Pyramid is a manufacturer of custom metal mouldings and parts for appliances and office furniture, and has manufacturing facilities in Chicago, Illinois, Georgia, and Florida. (Pl.'s LR Resp. ¶ 2; Def.'s LR Ex. 12, Illinois Dept. of Human Rights Rpt. at 1.) Hnizdor was employed at Pyramid's Chicago facility for nearly 33 years, from June 1966 until March 1999. (Pl.'s LR Resp. ¶¶ 1, 5.)

During her employment at Pyramid, Hnizdor served in several different positions. From 1966 to 1976, Hnizdor worked as a wrapper; from 1976 to 1981 she worked as a packer/tuber; from 1981 to 1996 she worked as a timekeeper; and, finally, from 1996 to 1999 she worked as a clerk. (Pl.'s LR Resp. ¶ 20; Def.'s LR Resp. ¶ 34; Def.'s LR Ex. 4, Dep. of Celia Hnizdor at 18.) Hnizdor's duties in her last position as a clerk included monitoring the switchboard, processing the incoming and outgoing mail, stamping signatures on checks, mailing out checks, totaling the amount of time spent by each manufacturing employee on a job, and entering that time data into Pyramid's system. (Pl.'s LR Resp. ¶ 25.)

Over the years, Pyramid provided Hnizdor with training in order for her to acquire skills

---

[1] The following facts are taken from the parties' responses to the respective statements of fact filed pursuant to Local Rule 56.1, which are cited herein as: "Pl.'s LR Resp. ¶ __" [dkt 59] and "Def.'s LR Resp. ¶ __" [dkt 61], as well as from the exhibits submitted with those statements or responses to those statements, which are cited herein as: "Def.'s LR Ex. __" [dkt 53] and "Pl.'s LR Ex. __" [dkt 58]. It should be noted that in many cases, Hnizdor states that she "can neither admit nor deny this statement as Plaintiff has no independent knowledge." *See, e.g.*, Pl.'s LR Resp. ¶ 15. Statements not responded to nor controverted by specific references to the record are deemed admitted. L.R. 56.1(b)(3).

which allowed her to remain employed. (Pl.'s LR Resp. ¶ 21.) Hnizdor's training included learning to insert labor ticket information into Pyramid's computer system for payroll purposes, and typing which she learned in a class at Wright Junior College for which Pyramid paid. (Pl.'s LR Resp. ¶¶ 22, 23, 24.)

## B.  Pyramid's Restructuring

In the mid-1990s, Pyramid decided to consolidate its accounting, sales, engineering and information technology systems functions by transferring those functions in the Chicago and Georgia facilities to the Florida facility. (Pl.'s LR Resp. ¶ 7.) Manufacturing operations in those facilities remained intact. (*Id*. ¶ 17.) Otto Boyett, Pyramid's President, testified that he made the decision to restructure because he wanted to have those functions located near him in Florida in order to manage them better. (*Id*. ¶¶ 3, 8.) Pyramid's Vice President of Accounting was also retiring at that time. (Def.'s LR Ex. 7, Dep. of Thomas Bartel at 34; *id.* Ex. 8, Dep. of Otto Stephen Boyett at 38-39; *id.* Ex. 9, Dep. of Ronald Martin at 15-16.) An Accounting Manager, Dianne Weatherford, was hired for the Florida location, and she, in turn, hired accounts payable and accounts receivable clerks for the Florida location. (Pl.'s LR Resp. ¶ 11.) The transition of the accounting function occurred between 1998 and 1999. (*Id*. ¶ 12.)

As a result of the restructuring, employees in the accounting and information technology systems groups at the Chicago facility lost their jobs. (Pl.'s LR Resp. ¶ 13.) Clerical positions supporting the accounting group were also eliminated. (Def.'s LR Ex. 5, Dep. of Erwin Walz at 31; Bartel Dep. at 119.) Specifically, nine clerical or technical office employees lost their positions, either because of the restructuring or for economic reasons. (Def.'s LR Ex. 6, Cont'd. Dep. of Erwin

Walz at 30.)[2]  Mr. Boyett was aware that his decision to restructure would result in the loss of employment for various personnel.  (Boyett Dep. at 27-28.)

Only three employees in the affected groups maintained their positions at the Chicago location:  Erv Walz, the Vice President of Human Resources; Tom Bartel, the Employee Relations Manager; and one information technology employee.  (Pl.'s LR Resp. ¶¶ 3, 17; Bartel Dep. at 12, 156.)  Only one employee, the Director of Information Technology Systems, was transferred from the Chicago facility to the Florida facility.  (Pl.'s LR Resp. ¶ 15.)  No other employees transferred to the Florida facility.  (*Id*.)  According to Mr. Bartel, the option of relocation was not offered to clerical employees due to "cost effectiveness" reasons because it was "easier to hire somebody directly there, than transferring somebody and [having to pay] relocation expenses and everything else." (Bartel Dep. at 67-68.)  Ron Martin, Pyramid's Vice President of Manufacturing, added that employees in clerical positions did not normally transfer due to "the cost associated of moving people." (Martin Dep. at 30.)

Mr. Boyett testified that Pyramid had a philosophy of trying to retain long-term employees. (Pl.'s LR Resp. ¶ 18.)  At the time of the restructure, 82% of the employees at the Chicago location were over age 40.  (*Id*. ¶ 19.)


**C.    The Termination of Hnizdor's Employment**

During the restructuring, on March 12, 1999, Hnizdor was asked to meet with Mr. Walz.

---

[2]  The record identifies the type of status change for eight of those nine clerical employees who lost their jobs due to the restructuring: Five were laid off (including Hnizdor); one resigned; one retired; and one was subsequently discharged (Kathy Sheehan).  (Cont'd. Walz Dep. at 100.)  The record does not reflect the type of status change for the ninth employee.

(Pl.'s LR Resp. ¶ 26.)  Mr. Walz told Hnizdor during the meeting that she would be discharged from her employment, effective April 1, 1999, if she did not voluntarily retire.  (Pl.'s LR Resp. ¶ 28.)  Also during the meeting, Mr. Walz asked Hnizdor how old she was, and when she responded that she was 67, he suggested that it might be time for her to retire.  (*Id*. ¶ 30; Hnizdor Dep. at 42-43, 50-51.)  Mr. Walz informed Hnizdor that while she had done a good job, she had been there for quite a long time.  (Pl.'s LR Stmt. ¶ 5; Hnizdor Dep. at 43.)  When Hnizdor stated that she did not want to retire, felt good, and liked to work, Mr. Walz told her that her employment would have to be terminated. (Pl.'s LR Resp. ¶ 29; Hnizdor Dep. at 42-43.)[3]  Hnizdor had no further interactions with Mr. Walz after that time.  (Pl.'s LR Resp. ¶ 33.)  Mr. Walz was 56 years old at the time of the meeting.  (Pl.'s LR Resp. ¶ 27.)

Hnizdor's counsel acknowledged at the argument on the present motion that there is no evidence in the record of Mr. Walz or anyone else in Pyramid's management making age-related comments prior to the restructuring.

Mr. Bartel, the Employee Relations Manager, also met with Hnizdor and explained that Hnizdor's last day of employment would be on March 31, 1999.  (Pl.'s LR Resp. ¶ 34; Hnizdor Dep. at 45.)  Mr. Bartel was 54 years old at the time of their discussion.  (Pl.'s LR Resp. ¶ 34.)

Hnizdor testified that she was never told her position was being eliminated or that she was being laid off.  (Pl.'s LR Resp. ¶ 31; Hnizdor Dep. at 44, 50-51.) Mr. Bartel, however, testified that he informed her that she was being laid off (Bartel Dep. at 99, 100-01; IDHR Rpt. at 3), and Mr.

---

[3]  Pyramid disputes Hnizdor's testimony (Def.'s Mem. at 12) [dkt 51], but acknowledges that Mr. Walz could not recall at his deposition, which occurred seven years after the meeting at issue, certain information that he discussed with Hnizdor during their meeting.  (Pl.'s LR Stmt. ¶ 33; Walz Dep. at 92-93, 97.)  The court will accept Hnizdor's, the non-movant's, version of the facts on this issue for purposes of this motion.

Walz testified that he advised her that her job was being eliminated and that she "understood the situation." (Walz Dep. at 90-91, 101.)

Hnizdor testified that she would have considered moving to Florida had she been given the option. (Hnizdor Dep. at 103; Def.'s LR Resp. ¶ 12.) Hnizdor did not ask Pyramid about the possibility of relocating to Florida, however. (Hnizdor Dep. at 102.) Nor did Pyramid ask Hnizdor to transfer to the Florida location. (*Id*. at 103.)

After Hnizdor's employment ended, her responsibilities as a clerk were absorbed by several employees: Kathy Sheehan, an accounting clerk, Anna Klosinski, secretary to Mr. Walz, and Mr. Bartel. (Pl.'s LR Resp. ¶ 35; Bartel Dep. at 156-57.) Hnizdor was asked to train Ms. Sheehan to perform certain data entry and timekeeping responsibilities before her last day of employment. (Pl.'s LR Resp. ¶ 36; Hnizdor Dep. at 49-50, 51-52.) The data entry work was a small portion of Ms. Sheehan's job functions. (Pl.'s LR Resp. ¶ 37; IDHR Rpt. at 6; Def.'s LR Ex 18.) Ms. Sheehan also handled the switchboard after Hnizdor's discharge. (Def.'s LR Resp. ¶ 26.) Along with those tasks, Ms. Sheehan was responsible for various accounting and accounts payable functions, skills in which Hnizdor had no education or experience. (Pl.'s LR Resp. ¶¶ 38, 41, 42; Cont'd. Walz Dep. at 24, 35-37; Bartel Dep. at 8, 125-26; Def.'s LR Ex. 10, Dep. of Dianne Weatherford at 26; IDHR Rpt. at 7; Def.'s LR Ex. 18.)[4] Ms. Sheehan was 34 years old at the time. (Pl.'s LR Resp. ¶ 36.)

Mr. Walz testified that Ms. Sheehan was the last accounting clerk to remain at the Chicago location while the restructure was occurring. (Pl.'s LR Resp. ¶ 43; Walz Dep. at 30, 32.) Ms. Sheehan's employment ended on May 9, 2001 for reasons that both parties agree are irrelevant to

---

[4] Ms. Sheehan's resume and employment application indicate that she had at least four years of experience as an accounts receivable clerk prior to becoming employed at Pyramid. (Def.'s LR Ex. 17.)

this lawsuit. (Pl.'s LR Resp. ¶ 44.) Hnizdor's counsel acknowledged at the argument on the present motion that Ms. Sheehan was not replaced, and that following Ms. Sheehan's termination the position was moved to Florida.

Some time after her discharge, Hnizdor was offered a part-time position at Pyramid, but she turned it down. (Hnizdor Dep. at 101-02; Cont'd. Walz Dep. at 109-10.) Other positions for which Hnizdor was qualified may have become available after her discharge, but Hnizdor was not contacted about those positions. (Def.'s LR Resp. ¶¶ 35, 37.) Mr. Walz testified that he believed Hnizdor would not have been interested in any other position at Pyramid because she adamantly turned down the part-time position that was offered her. (Cont'd. Walz Dep. at 109-10.)

## LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The court may not make credibility determinations, "choose between competing inferences" or weigh the evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Once the moving party has met the initial burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits, (*id.*), but must present evidence of "evidentiary quality" demonstrating the existence of a genuine issue of material fact. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994).

## DISCUSSION

### I. Hnizdor's Evidence of Age Discrimination

The ADEA provides that "[I]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court has held that to prevail on an ADEA claim, a plaintiff must demonstrate that her age was the "but-for" cause of the challenged employment action. *Gross v. FBL Fin. Servs.*, __ U.S. __, 129 S. Ct. 2343, 2352 (2009). A plaintiff may proceed under either the direct or indirect methods of proof. *Martino v. MCI Commun. Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009).[5] In this case, Hnizdor attempts to show intentional discrimination through both methods of proof.

### A. Direct Method

To withstand summary judgment under the direct method of proof, Hnizdor must present

___

[5] Although the Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green* . . . utilized in Title VII cases is appropriate in the ADEA context" (*Gross*, ____U.S. ____, 129 S. Ct. at 2349 n. 2), the Seventh Circuit has continued to apply the burden-shifting framework to ADEA cases. *See, e.g., Martino*, 574 F.3d at 453; *Senske v. Sybase, Inc.*, 588 F.3d 501, 506-07 (7th Cir. 2009).

direct or circumstantial evidence that Pyramid terminated Hnizdor's employment "because of" her age. *Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009); *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). Direct evidence typically consists of an admission of discriminatory animus, *Mach*, 580 F.3d at 499; *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005), but may also consist of sufficient circumstantial evidence pointing directly toward a discriminatory motive. *Jordan v. City of Gary*, 396 F.3d 825, 832 (7th Cir. 2005).

In arguing that she has sufficient evidence under the direct method to establish discrimination, Hnizdor relies on her testimony that at the meeting where she learned her employment would be terminated, Mr. Walz asked her, upon hearing that she was 67, "Isn't it time you gave someone else the job and retire?" (Hnizdor Dep. at 42.) While acknowledging that isolated remarks are generally insufficient to meet a plaintiff's burden, Hnizdor argues that, in this case, the remarks were made by a decision-maker in the context of her termination, which, she states, is sufficient. (Pl.'s Opp'n at 9.) [Dkt 58.]

Pyramid disputes the accuracy and reliability of Hnizdor's testimony, but, as noted above, the court will adopt Hnizdor's version for this motion. Pyramid also argues that Mr. Walz was not the decision-maker, that he was "merely the messenger of a higher level corporate restructuring decision," and his comments would only be relevant if he had singular influence over Mr. Boyett, the person who made the decision to restructure and caused the loss of employment. (Def.'s Mem. at 13.)

Even assuming for purposes of the motion that Mr. Walz was the decision-maker and made the comments attributed to him, Hnizdor does not have sufficient evidence under the direct method to withstand summary judgment. The inquiry, under *Gross*, is whether Pyramid terminated

Hnizdor's employment *because of her age*, and not some other reason. It is not enough to show that age was *a* motivating factor; rather, the plaintiff must prove that, *but for her age*, the adverse action would not have occurred. *See Gross,_____* U.S. at __, 129 S. Ct. at 2349-51. Under *Gross*, Hnizdor must prove that her age is *the* reason she lost her job. *Id.* Showing that her age possibly solidified the decision to terminate her employment is not sufficient. *Martino*, 574 F.3d at 455.

Hnizdor cannot show that she lost her job because of her age as opposed to Pyramid's restructuring. Hnizdor cannot and does not dispute the evidence that Pyramid decided to restructure some of its groups, and that many employees lost their jobs as a result. Nine clerical/office employees lost their jobs because of the restructuring, and none of them were given the opportunity to transfer to Florida. The only employees allowed to remain at the Chicago facility or transfer to the Florida facility were either in the information technology systems group or were managers: the Director of Information Technology Systems, an information technology employee, the Vice President of Human Resources, and the Employee Relations Manager. The option of relocation was not offered to clerical staff for cost effectiveness reasons. Only one clerical/accounting employee, Ms. Sheehan, was allowed to remain employed after Hnizdor was terminated (approximately two years longer), but the evidence is undisputed that Ms. Sheehan had skills and experience, including accounting and accounts payable skills, that Hnizdor did not have.

Hnizdor argues that Mr. Walz's comments allow her to get to a jury on her ADEA claim, citing *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622 (7th Cir. 2009). In *Darchak*, the principal who decided to terminate the plaintiff teacher allegedly called the plaintiff "you stupid Polack," and made similar remarks showing anti-Polish bias. 580 F.3d at 627. But *Darchak* was a Title VII claim, not an age discrimination claim. As the court observed, the plaintiff there could

prevail on a "mixed motive" theory even if the defendant showed valid reasons for not renewing the plaintiff's contract. *Id*. at 633. After the *Gross* decision, there is no "mixed motive" theory for age discrimination cases. As the Court said, "Our inquiry therefore must focus on the text of the ADEA to decide whether it authorizes a mixed-motives age discrimination claim. It does not." *Gross*, ___ U.S.___, 129 S. Ct. at 2350.

### B.    Indirect Method

To establish a prima facie case of age discrimination under the indirect method of proof, a plaintiff must prove that: (1) she is a member of the protected age class, (2) her performance met the company's legitimate expectations, (3) despite her performance she was subject to an adverse action, and (4) the company treated similarly situated employees under the age of 40 more favorably. *Martino*, 574 F.3d at 453; *Senske*, 588 F.3d at 506-07. If a plaintiff satisfies those criteria, the employer may provide a legitimate, nondiscriminatory reason for the adverse action. *Martino*, 574 F.3d at 453. If the employer can offer such a reason, the plaintiff must show that the employer's reason is a pretext for discrimination. *Id.*

Hnizdor can meet the first three elements of a prima facie case: she is in the protected age class (67 at the time of her termination); her performance met Pyramid's legitimate expectations; and she was subject to an adverse action. However, Hnizdor cannot establish the fourth element, that Pyramid treated similarly situated employees more favorably. Her only proffered comparable employee is Ms. Sheehan, whom the company retained two years longer than Hnizdor. The evidence is undisputed that Ms. Sheehan had different skills than Hnizdor. Ms. Sheehan was not just a clerk but an accounting clerk, who was responsible for various accounting and accounts payable functions,

functions in which Hnizdor had no education or experience. Although Ms. Sheehan did take over some of Hnizdor's job duties, such as data entry and switchboard, it is undisputed that those duties were only a small portion of Ms. Sheehan's job functions. Thus, Ms. Sheehan was not similarly situated to Hnizdor. In addition, it is undisputed that a total of nine clerical employees, including Hnizdor, lost their jobs as a result of the restructuring. None, except an information technology employee, transferred to Florida. Thus, again, similarly situated employees were not treated more favorably, and, accordingly, Hnizdor cannot establish a prima facie case of discrimination.

Even assuming, *arguendo*, that Hnizdor has established a *prima facie* case of discrimination, Pyramid has provided a legitimate, nondiscriminatory reason for the termination, namely, the restructuring of the Chicago facility, and Hnizdor has not produced any evidence that that reason is pretextual. She argues that Pyramid could have transferred her to Florida but never made the offer. However, it is undisputed that eight other clerical/office employees also failed to receive an offer to transfer, because Pyramid thought it would be more cost effective to hire employees for those positions locally.

Hnizdor was working at Pyramid at age 67. There is no evidence that there was any discussion or concern about her continued employment before the restructuring. There is simply no evidence to show that Pyramid's decision to terminate Hnizdor as part of the restructuring was a pretext for age discrimination. Accordingly, Pyramid is entitled to summary judgment.

## II.    Judicial Estoppel

Pyramid argues that there is a second reason why it is entitled to summary judgment: that Hnizdor is judicially estopped or barred by her settlement of a previous legal malpractice case. That

argument requires some additional factual background.

In April 1999, Hnizdor filed a charge of discrimination with the Illinois Department of Human Rights (IDHR) alleging that her employment had been terminated in violation of the ADEA. (Pl.'s LR Resp. ¶ 45.) Hnizdor's charge was also filed with the Equal Employment Opportunity Commission (EEOC). (*Id*. ¶ 46.) Hnizdor's administrative charge proceeded before the IDHR, and a fact-finding conference was conducted in September 1999. (*Id*. ¶ 47; Def.'s LR Resp. ¶ 16.) Following the investigation, the IDHR concluded that there was not sufficient evidence to sustain the charge and recommended that the charge be dismissed. (Pl.'s LR Resp. ¶ 48.)

In 2003, Hnizdor, at that time represented by her current counsel of record, sued the attorneys who had represented her before the IDHR for legal malpractice. (Def.'s Ex. 13, Malpractice Compl.; Pl.'s LR Resp. ¶ 51; Def.'s LR Resp. ¶ 22.) In that lawsuit, Hnizdor alleged that her former attorneys falsely told her that they had filed a complaint in the state Circuit Court regarding her IDHR case when, in fact, they had not. (Malpractice Compl. ¶¶ 15-19.) She also alleged that, in any event, the proper place of filing would have been the Illinois Human Rights Commission not the Circuit Court. (*Id*.) Hnizdor alleged that, because of her former lawyers' malpractice, she was "precluded from bringing her age discrimination claim in any forum," and "unable to vindicate her rights that have been violated by Pyramid." (*Id*. ¶ 31.) Hnizdor requested damages in excess of $30,000, including all compensatory and liquidated damages that she "could have reasonably expected to recover from Pyramid." (*Id*. at 5.)

Ultimately, Hnizdor reached a settlement with her former attorneys and entered into a written settlement agreement under which Hnizdor was paid $90,000 in exchange for dismissing her claims of legal malpractice and negligent misrepresentation. (Pl.'s LR Resp. ¶¶ 54, 55; Def.'s LR Resp.

¶ 23; Def.'s LR Ex. 14.)  Pyramid was not a party to the settlement agreement.  (Def.'s LR Resp. ¶ 24.)  The Circuit Court of Cook County entered an order on December 29, 2004, dismissing Hnizdor's malpractice case with prejudice pursuant to the settlement.  (Pl.'s LR Resp. ¶ 56.) Hnizdor signed the settlement agreement, entitled "General Release," on January 11, 2005.  (Def.'s LR Ex. 14.)

Less than ten days later, on January 18 or 19, 2005, the EEOC issued a "Notice of Right to Sue (Issued on Request)" to Hnizdor, which was attached as an exhibit to the complaint filed by Hnizdor's present counsel in this lawsuit in March 2005.  (Compl., Ex. B.)  Hnizdor's claims and allegations in this lawsuit are factually identical to the claims and allegations contained in her charge filed with the IDHR.  (Pl.'s LR Resp. ¶ 58.)

Early on in this lawsuit, Pyramid moved for summary judgment on the ground that Hnizdor's claims in this case are barred as a result of her settlement of the malpractice action or, alternatively, that Hnizdor is judicially estopped from pursuing recovery under her complaint.  (Def.'s Mem. at 7-10).  The District Judge denied Pyramid's first motion for summary judgment.  (Order, June 27, 2006.)  [Dkt 22.]  Pyramid argues that its current motion for summary judgment setting forth those same two arguments is appropriate because a "more complete factual record" has become available since the time it filed its first motion for summary judgment, and because the Seventh Circuit has provided "new guidance" in *Butler v. Village of Round Lake Police Dept.*, 585 F.3d 1020 (7th Cir. 2009).  (Def.'s Reply at 2.)  [Dkt 60.]

The denial of a motion for summary judgment is an interlocutory order that can be reconsidered.  The Seventh Circuit has cautioned, however that:

law-of-the-case principles are applicable when a case is transferred to a new judge

midway through litigation; in general, the successor judge is discouraged from reconsidering the decisions of the transferor judge. The successor judge should depart from the transferor judge's decision only if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that has benefitted from it.

*Gilbert v. Illinois State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2009) (citations and quotations omitted).

Although discovery has concluded, Pyramid has not identified any new evidence that has come to light since the denial of its earlier motion for summary judgment that would change the result of the District Judge's order. Likewise, Pyramid has not demonstrated that the *Butler* decision results in a conclusion that Hnizdor is barred or judicially estopped. In *Butler*, the Seventh Circuit concluded that the plaintiff was judicially estopped from bringing a claim against the Village of Round Lake because his testimony in his successful proceeding before the Village's Pension Board was inconsistent with his position in his lawsuit. 585 F.3d at 1024. "Judicial estoppel provides that a party who prevails on one ground in a prior proceeding cannot turn around and deny that ground in a subsequent one. . . . Its purpose is to prevent a litigant from prevailing twice on opposite theories." *Id.* at 1022 (citations and quotations omitted). Hnizdor's malpractice lawsuit, however, never went to a judicial determination; it was dismissed with prejudice as a result of the settlement.

Most importantly, it is not necessary to revisit the District Judge's earlier decision to deny Pyramid's motion for summary judgment on this basis because Pyramid is entitled to summary judgment on the merits of Hnizdor's claim.

But a final point is necessary here. Regardless of whether Hnizdor is technically barred or estopped from bringing her claim against Pyramid, the timeline of events is very troubling. Less than a month after Hnizdor dismissed a malpractice lawsuit in which she (through her current counsel)

claimed that she was forever precluded from bringing a claim against Pyramid "in any forum," and less than *ten days* after she signed an agreement settling that claim – a settlement that paid her $90,000 – Hnizdor obtained a Notice of Right to Sue (Issued on Request) from the EEOC, and promptly filed this lawsuit against Pyramid (again through her current counsel). This sequence raises the very serious question of whether at the time Hnizdor and her counsel accepted the $90,000 settlement payment they knew that the fundamental premise of the malpractice case was untrue because Hnizdor still had a viable avenue for a claim against Pyramid by way of the EEOC filing. Pyramid was not a party to the settlement and did not pay any of the settlement amount. But Hnizdor's former attorneys and their insurer did pay $90,000 to settle Hnizdor's allegation that those lawyers had prevented her from bring any action against Pyramid – an allegation that was, in fact, not correct. They should be informed of this lawsuit and her claims here.

Accordingly, Hnizdor's present counsel is hereby ordered to serve by mail or delivery a copy of this Memorandum Opinion and Order on Hnizdor's former attorneys who were the defendants in the malpractice case and on the attorneys who represented those defendants in that malpractice case no later than 14 days after the issuance of this opinion.

## CONCLUSION

For the reasons set forth above, Pyramid's motion for summary judgment is granted. Judgment is entered in favor of the defendant and against the plaintiff. Hnizdor's present counsel is hereby ordered to serve by mail or delivery a copy of this Memorandum Opinion and Order on Hnizdor's former attorneys who were the defendants in the malpractice case and on the attorneys who represented those defendants in that malpractice case no later than 14 days after the issuance

of this opinion.

IT IS SO ORDERED.

_____
GERALDINE SOAT BROWN
United States Magistrate Judge

DATED:        April 30, 2010